Nick L. Spada v. Commissioner.
Spada v. Commissioner
Docket No. 17212.
United States Tax Court
1950 Tax Ct. Memo LEXIS 165; 9 T.C.M. (CCH) 541; T.C.M. (RIA) 50158; June 28, 1950
*165 Petitioner and his wife held to be bona fide partners in the wholesale produce business. Robert T. Jacob, Esq., Public Service Bldg., Portland, Ore., and Randall S. Jones, Esq., for the petitioner. Robert G. Harless, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency in income taxes for the taxable year 1943 in the amount of $3,177.14. The only issue herein is whether the respondent was correct in determining that petitioner and his wife were not bona fide partners in the operation of a business and that for Federal tax purposes the wife's share of partnership earnings for the period July 1, 1943, to December 31, 1943, was properly taxable to the petitioner. This case was presented on a partial stipulation of facts, documentary and oral evidence. Findings of Fact The petitioner herein, Nick L. Spada, and his wife, Mary Spada, are residents of Portland, Oregon, and filed separate individual income tax returns for the calendar year 1943 with the collector of internal revenue for the district of Oregon. Petitioner and his wife were married on December 11, 1927. Prior to their marriage *166 Mary Spada was employed by the Pioneer Fruit Company, later incorporated under the name of Pioneer Fruit Distributors, a wholesale fruit and produce business owned and operated by her father and brother. She was first employed by that firm in about 1919 when she was approximately 14 years old and after she had completed one year of high school and a course in business college. She continued her employment with that company until her marriage to the petitioner. Her duties were confined to office activities, including bookkeeping, billing, and credit work. Prior to his marriage in 1927, petitioner was employed with his father as a truck farmer and in the produce business. In January, 1932, petitioner was employed by the Pioneer Fruit Company as a salesman, warehouseman and truck driver, which position he retained until June, 1937. Most of his experience was in warehouse work. During the period of her employment from 1919 until 1927, Mary Spada saved about $2,500 from her salary. On February 14, 1927, she used $1,550 of this sum to purchase a lot located in the City of Portland. Subsequent to this purchase and prior to their marriage, she and petitioner contacted the Brice Mortgage *167 Company relative to making a loan in the amount of $4,000 to construct a home on the lot. The Mortgage Company agreed to make the construction loan but required Mrs. Spada, then Mary Dindia, to convey an undivided one-half interest in that lot to her future husband, the petitioner. Both Mary Spada and petitioner signed each note and mortgage made on this property. The conveyance to petitioner was executed on October 13, 1927, and on the same day the loan was authorized. Construction of the home was completed in 1927. The construction loan was thereafter exchanged for a long-term loan from the Prudential Life Insurance Company in the amount of $4,000, which loan was repaid prior to 1940. For three or four years after her marriage, Mary Spada worked from time to time for the Pioneer Fruit Company as relief for girls in the office who were on vacation. Over this span of time until November, 1940, she earned a few hundred dollars. Her savings from these earnings were divided between an account she maintained with her husband and a savings account in her own name which she had opened prior to her marriage and had retained since that time. Mary Spada's personal savings account fluctuated *168 over the years between a balance as low as $1 and as high as $300 or $400. In 1937 petitioner was employed by the Pacific Coast Fruit Company, a sole proprietorship then owned by Nate Halpern. This company was engaged in the fruit and produce business and was a competitor of Pioneer Fruit Distributors. The petitioner worked for that company until November 4, 1940, when, with his wife's urging, he purchased the business from Halpern for a total consideration of $6,403.43. Subsequent to the purchase the business continued in operation under the name of Pacific Coast Fruit Company. The funds obtained for making the purchase were acquired from two loans, one for $2,400 and another for $4,000. A loan in the amount of $2,400 was obtained from the United States National Bank of Portland. The application made to the bank for the loan of $2,400 was made in the name of and signed by the petitioner. Both petitioner and his wife signed a note secured by a mortgage on their home in the amount of $2,400, dated November 1, 1940, which note was repaid from the profits of the Pacific Coast Fruit Company earned prior to August, 1942. An additional $4,000 was borrowed from the bank on an unsecured *169 promissory note dated November 4, 1940, signed by Nick L. Spada, Mary Margaret Spada, and her parents, Salvatore Dindia and Antonia Dindia. Mary Spada contacted her parents and persuaded them to sign as co-makers of the note as the bank refused to lend $4,000 solely on the basis of the Spadas' credit. Mary Spada's parents would not have signed the note for petitioner alone and consented with the understanding that she was to have an interest in the business and that if the parents were called upon to pay the note, the $4,000 would be taken off her inheritance from them. This note for $4,000 was thereafter repaid from the profits of the business earned prior to April, 1942. In addition to the aforementioned loans, the sum of $1,700 for working capital in the new business was obtained by transfer on November 8, 1940, of a commercial account in the name of Nick L. Spada to a checking account in the name of the Pacific Coast Fruit Company. Some part of the funds in the account transferred represented money of Mary Spada. In addition to these funds, petitioner borrowed $1,000 from his father which sum was repaid within a year. At the time the Pacific Coast Fruit Company was purchased, *170 it was understood between petitioner and Mary Spada, his wife, that the business would be operated on a partnership basis with each having an undivided one-half interest and that this understanding would thereafter be reduced to writing in a formal partnership agreement. Mary Spada's knowledge and experience in the fruit and produce business was of real value in the operation and management of the Pacific Coast Fruit Company. At least two or three times a week after business hours Mary Spada would come to the business premises and talk with the petitioner concerning company matters. From the knowledge obtained by her in working with her father and brother, she was able to render valuable advice concerning growers and as to the handling of different customers, particularly with reference to their credit standing. She also assisted in the purchasing of fruits and vegetables and upon her recommendation the purchasing of perishables such as oranges was limited, and the buying of items such as potatoes was increased. She also took an active interest in the equipment used in the business and was successful in her objections to the petitioner's plans to purchase expensive trucks and to *171 acquire an airplane for making business trips. Travel for the purpose of purchasing produce was curtailed at her insistence and at her suggestion more ordering was done by wire. Although the problems and policies concerning the employees were primarily in the hands of petitioner, he would upon her request discharge employees of whom she disapproved. During the war years, Mary Spada contacted her brother who operated the Pioneer Fruit Distributors Corporation and arranged for a steady supply of bananas which were not available to the petitioner from other sources. This was of particular importance to the petitioner as bananas represented approximately 15 to 20 per cent of its sales. At the insistence of his wife that the formal partnership agreement be drawn up, petitioner in the early summer of 1943 approached Andrew Boitano, a public accountant whose firm maintained the books of Pacific Coast Fruit Company, about the matter. Boitano referred petitioner to Robert Jacob, an attorney in the City of Portland. Petitioner and Boitano informed Jacob of petitioner's desire to create a partnership between himself and wife. A partnership agreement was thereupon drafted by one of Jacob's *172 employees. The articles purport to create an equal partnership between petitioner and his wife, effective July 1, 1943, and provide that the profits and losses of the partnership shall be borne by the parties equally, that each of the parties shall have an equal voice in the control and management of the partnership business; and that each shall have the right and privilege of withdrawal to meet his or her respective needs. The respective capital contributions to the alleged partnership representing one-half interests in the capital account of the business were each valued at $14,711.97 or a total of $29,423.94. The Federal gift tax return filed by petitioner stated the amount of $14,711.97 as the value of the wife's alleged interest. No tax was assessed at the time the return was filed. The valuation of the share was later increased by the Commissioner and a tax assessed. On August 13, 1943, an Assumed Business Name Certificate showing Mary Spada as a participant and a holder of an interest in the company, executed and acknowledged by the petitioner and Mary Spada on July 1, 1943, was filed in the office of the County Clerk, Multnomah County, Oregon. Subsequently, the firm's *173 insurance policies were made out to petitioner and Mary Spada doing business as the Pacific Coast Fruit Company. After July 1, 1943, Mary Spada was authorized to sign checks on the business bank account. She exercised this authority on occasions when petitioner was out of the city or otherwise occupied. The capital interests of petitioner and Mary Spada for the years 1943 to 1948, inclusive, were shown by their respective capital accounts. At the end of 1943, petitioner's account revealed a balance of $8,496.79 and Mary Spada's, $17,286.17. According to the drawing accounts, in 1943 petitioner withdrew $11,238.77 and Mary Spada, $2,449.38. Of the amount of $2,449.38 charged to the drawing account of Mary Spada for 1943, apparently $1,426.81 represented state and Federal tax payments; $22.57 insurance premiums; and a total of $1,000 in withdrawals was not identifiable as to purpose. On June 30, 1945, Mary Spada's drawing account was charged $15,516.70, including $15,000 withdrawn to purchase Treasury bearer bonds in her name. The bonds were coupon bonds and the proceeds from the coupons were used to purchase things for her home such as silver. The present home of the petitioner *174 and his wife, which is jointly owned, was purchased through drawings charged jointly to their accounts. Mary Spada paid household expenses with money she withdrew from a joint bank account in which funds withdrawn from the company drawing account of both her and petitioner were deposited. For the period November 4, 1940, to December 31, 1940, the business earned a net profit of $1,484.71; for 1941 a net profit of $8,929.61; for 1942 a net profit of $16,609.10; and for the first six months of 1943, a net profit of $22,562.84. A partnership return was filed with the collector of internal revenue for the district of Oregon for the taxable period July 1, 1943, to December 31, 1943. As income from the partnership for the period July 1, 1943, to December 31, 1943, petitioner returned $5,051.09 and Mary Spada returned $5,051.08. The Commissioner in a notice of deficiency dated November 14, 1947, attributed to the petitioner income of $5,051.08 * reported by Mary Spada and increased the income reported by petitioner accordingly. During the taxable *175 period July 1, 1943, to December 31, 1943, inclusive, petitioner and his wife, Mary Spada, each owned an undivided one-half interest and were bona fide partners in the business conducted under the name of Pacific Coast Fruit Company. Opinion ARUNDELL, Judge: The validity of a partnership for Federal tax purposes turns upon the question of whether the parties in good faith and acting with a business purpose really and truly intended to join together in the present conduct of a business enterprise, having agreed that the services or capital to be contributed presently by each of the partners is of such value to the partnership that the contributor should participate in the distribution of profits. Intention is to be determined from the nature of the agreement between the parties, their conduct, their statements, the testimony of disinterested persons, their respective abilities and capital contributions, the actual control of income and the purposes for which it was used, and any other facts throwing light on their true intent. . Petitioner and his wife have both testified that from and after the purchase of Pacific Coast Fruit *176 Company on November 4, 1940, and during the taxable period it was their intention to associate themselves as partners in the conduct of the business, each possessing an undivided one-half interest therein. We are satisfied that the evidence herein clearly establishes this intention. Petitioner has demonstrated that Mary Spada made substantial contributions to the raising of capital for the acquisition of the business. The $6,403.43 with which the business was purchased and the $1,700 of original working capital was obtained from three principal sources. A loan was obtained from the bank in the amount of $2,400 and was secured by a mortgage on the Spada home. The lot on which this home was located had been purchased for $1,550 by Mary Spada prior to her marriage from savings she had accumulated while working in the business of her father and brother. An additional loan of $4,000 was obtained from the United States National Bank of Portland, which bank had initially refused to lend money to the Spadas on an unsecured promissory note unless the signatures of Mary Spada's parents were added as co-makers. The signatures of the parents were obtained by Mary Spada with the understanding *177 that she would have an interest in the business and that if the parents were called upon to meet the note, her inheritance from them would be accordingly reduced. In regard to the $1,700 which was withdrawn as working capital from a commercial account carried in the name of the petitioner, it appears that it was not solely petitioner's money but that a part of the funds therein had been deposited by Mary Spada from her own earnings. It is our conclusion that Mary Spada, in permitting her interest in the home and bank account to be used in raising money for the purchase of the business and as working capital and by persuading her parents to sign as co-makers on the note for $4,000, made substantial and vital contributions to the capital used in establishing the business. However, Mary Spada's participation in the business was not confined solely to the raising of capital to permit its purchase but the record shows that she continued thereafter to play an important part in the active direction of its policies and operation. Her activities in this respect have been set out in full in our Findings of Fact and it suffices to say that it is our opinion that they constitute further evidence *178 of an intention that she was to participate in the successful conduct of the business as an active partner rather than as an interested or helpful wife. She possessed long experience in the wholesale produce business and was better acquainted with office practice and policies than the petitioner and regularly contributed the benefit of this knowledge and experience to the business. During the war years, she once more solicited the help of her family and through them succeeded in obtaining a source of bananas, the sales of which constituted from 15 to 20 per cent of business receipts. Respondent places great emphasis upon the fact that no formal partnership agreement was executed until July 1, 1943. However, as we have previously indicated, the primary consideration is the intention of the parties, determined from all the evidence, and the courts have consistently refused to recognize the mere existence or non-existence of a written partnership agreement and the intention expressed therein as determinative of the issue. . No greater weight has been accorded to statements found in the Federal tax returns of the parties or entries *179 in the business books. ; . The inference respondent would have us draw from the parties' failure to formally recognize Mary Spada as a partner until July 1, 1943, is dimmed by the fact that petitioner is not asking either the respondent or this Court to recognize the partnership between himself and his wife for tax purposes prior to July 1, 1943. Furthermore, the record does not support the respondent's contention that Mary Spada received no distribution of business profits other than amounts necessary to take care of household expenses and taxes. Although the evidence is not clear as to the exact disposition made of her share of partnership profits, we find no basis in the record for respondent's assumption that she used such income to defray the ordinary household expenses customarily paid by the petitioner. While it is true that Mary Spada did not make large withdrawals from her partnership account, there appears to have been no reason except her own choice for not doing so. The fact that she may have used some part of her share of partnership earnings toward the purchase of a new home and luxuries *180 such as silver, we regard of little importance where, as here, it appears that such expenditures were made by her with her own money and by her own free choice. Therefore, it is our conclusion that petitioner and his wife actually intended in good faith to carry on the business of the Pacific Coast Fruit Company during the taxable period from July 1, 1943, to December 31, 1943, inclusive, as partners, each possessing an undivided one-half interest in the business. The Commissioner erred in determining that the distributable share of Mary Spada in the partnership earnings for the taxable period in question was taxable to the petitioner. Decision will be entered under Rule 50. Footnotes
*. The letter states $5,051.09 as the amount by which petitioner's income is to be increased, but Mary Spada actually returned $5,051.08.↩